Linda BAGLINI, Admrx. of the Estate of Joseph A. Baglini, Deceased, and Linda Baglini, Individually, Plaintiff,

v.

PULLMAN, INC., et al., Defendants,

v.

SOUTHWEST RAILWAY EQUIPMENT COMPANY et al., Third-Party Defendants.

Marjorie S. JENKINS, Admrx. of the Estate of Robert H. Jenkins, Deceased, and Marjorie S. Jenkins, Individually, Plaintiff,

v.

PULLMAN, INC. et al., Defendants.

v.

SOUTHWEST RAILWAY EQUIPMENT COMPANY et al., Third-Party Defendants.

James W. FRABONI, Plaintiff,

v.

PULLMAN, INC., et al., Defendants,

v.

SOUTHWEST RAILROAD EQUIPMENT COMPANY, et al., Third-Party Defendants.

Civ. A. Nos. 75–406, 75–407 and 75–1216.

United States District Court,
E. D. Pennsylvania,
Civil Division.

March 11, 1976.

**1062**

Richard F. Stevens, Allentown, Pa., for plaintiffs.

Robert M. Britton, Philadelphia, Pa., for Southwest Railway.

Curtis P. Cheyney III, Philadelphia, Pa., for Roscoe, Snyder and Pacific Railway.

Joseph N. Ewing, Jr., Philadelphia, Pa., for Lehigh Valley R.R.

Kenneth L. Salmon, David G. Klaber, Pittsburgh, Pa., Robert H. Holland, Bethlehem, Pa., for Pullman.

Peter P. Liebert, III, Philadelphia, Pa., for Cargill.

## OPINION

DITTER, District Judge.

These cases involve an alleged conflict of interest on the part of plaintiffs' attorney. They came before the court on a defense motion to disqualify him and to dismiss the suits because of the representation by plaintiffs' counsel of a potentially adverse party at the time of the incident from which the actions arose. Following a hearing and after consideration of counsels' briefs, I concluded that no prejudice had resulted or would result to either the plaintiffs or defendants from the continued participation of plaintiffs' present attorney, and accordingly denied defendants' motion. A review of that order has been sought in the court of appeals. I am filing this opinion to elaborate upon the reasons for my decision.[1]

These cases arose out of an accident which occurred on November 26, 1974, during an attempt to re-rail a hopper car onto tracks owned and maintained by Lehigh Valley Railroad Company ("Lehigh"). The car, loaded with 200,000 pounds of salt, had been hoisted into the air by a railroad crane. Joseph Baglini, Robert H. Jenkins, and James W. Fraboni, all Lehigh employees acting within the scope of their employment, were near or under the car positioning railroad ties so that the car could be returned to the tracks. At that moment, a part of the car to which the crane had been hooked tore loose and the car fell. As a result, Baglini and Jenkins died and Fraboni sustained personal injuries. Invoking the diversity jurisdiction of this court, the respective administratrices of the estates of Baglini and Jenkins instituted wrongful death and survival actions[2] against Pullman Incorporated and Pullman Leasing Co., Inc. (hereinafter collectively designated as "Pullman"), which manufactured the hopper car, and Cargill, Inc., which leased it. Fraboni also sued to recover for personal injuries he received in the accident. All three actions are premised on theories both of strict liability and negligence.

Pullman denied liability but also joined Southwest Railway Co. ("Southwest") and Lehigh as third-party defendants,[3] alleging that they were solely liable or liable over for any damages suffered by plaintiffs. Lehigh subsequently filed cross-claims and counterclaims against the other third-party defendants and Pullman. Plaintiffs eventually filed amended complaints which named the original defendants and third-party defendants—with the exception of Lehigh—as multiple defendants, and sought recovery under the same theories as advanced in the original complaint.

At some point thereafter, Pullman learned that plaintiffs' counsel of record,

---

1. In addition to stating my finding that no prejudice to either side would inure from plaintiffs' attorneys continued participation, my order cited *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975), and *American Roller Company v. Budinger*, 513 F.2d 982 (3d Cir. 1975), both of which will be discussed at length in the course of this opinion.

2. See 12 P.S. §§ 1601 et seq. and 20 P.S. §§ 3371 et seq., respectively.

3. By an order dated October 2, 1975, I granted the unopposed motion of a third-party defendant, Roscoe, Snyder and Pacific Railway Co., for summary judgment. See Document No. 32 in Civil Actions Nos. 75–406 and 75–407, and Document No. 25 in Civil Action No. 75–1216.

Richard F. Stevens, Esquire, of the firm of Butz, Hudders & Tallman, of Allentown, Pennsylvania, as the representative of Lehigh,[4] had participated in the investigation of the incident which is the basis of this suit. Especially objectionable from Pullman's viewpoint was Mr. Stevens' presence on behalf of Lehigh at a December 10, 1974, meeting attended by Pullman and Cargill personnel at the railroad's Sayre, Pennsylvania, offices. Alleging that the representation of plaintiffs in this action by Mr. Stevens and his law firm, in light of their representation of Lehigh, violates Canons 1,[5] 4,[6] 5,[7] and 9[8] of Professional Ethics of the American Bar Association, Pullman moved this court to (1) disqualify plaintiffs' counsel and his firm, (2) dismiss these actions, and (3) frame protective orders enjoining Mr. Stevens and the firm of Butz, Hudders & Tallman from exchanging advice or information with any future counsel plaintiffs may retain.

At the outset, it is plain that by virtue of regulatory power over the members of its bar, this court possesses jurisdiction to enforce the canons of legal ethics. *Richardson v. Hamilton International Corp.,* 333 F.Supp. 1049, 1052 (E.D.Pa.1971), aff'd. 469 F.2d 1382 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *E. F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 378 (S.D.Tex.1969). As the Court of Appeals for this Circuit observed

in *Richardson v. Hamilton International Corp.,* supra:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. . . The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety [footnote omitted].

469 F.2d at 1385–86. Indeed, since its determination may only be set aside for an abuse of discretion, *Kroungold v. Triester,* 521 F.2d 763, 765 (3d Cir. 1975); *Richardson v. Hamilton International Corp.,* supra, 469 F.2d at 1386; *Greene v. The Singer Company,* 461 F.2d 242, 243 (3d Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972),[9] the district court's responsibility is particularly awesome in a question of this sort.

In support of its motion, Pullman cited *Richardson v. Hamilton International Corp.,* supra; *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir. 1975); *T. C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953); and *Slater v. Rimar, Inc.,* 338 A.2d 584 (Pa.1975). Although I do not question the result reached in any of these cases, since each involved a situation where a defendant was exposed to actual or potential

---

**4.** Mr. Stevens and his firm are included in the May, 1975, published membership list of the National Association of Railroad Trial Counsel (Eastern Region), and are represented in that publication as counsel for Lehigh. The firm additionally lists Lehigh as a client in its listing in the 1975 edition of the Martindale Hubbel Legal Directory. At the hearing on these motions, Mr. Stevens stated that he continues to represent Lehigh.

**5.** Canon 1 provides: "A lawyer should assist in maintaining the integrity and competence of the legal profession."

**6.** Canon 4 provides: "A lawyer should preserve the confidence and secrets of a client."

**7.** Canon 5 provides: "A lawyer should exercise independent professional judgment on behalf of a client."

**8.** Canon 9 provides: "A lawyer should avoid even the appearance of professional impropriety."

**9.** The Court of Appeals recently, however, has expressed "serious reservations" whether its scope of review was limited to finding an abuse of discretion in disqualification cases where at issue "is the purely legal question of whether two allegedly adverse representations are so intertwined that it can be said that in the former representation the attorney 'might have acquired' material 'substantially related' to the subject matter of the second representation. [d]etermination of that question leaves little leeway for the exercise of discretion." See *American Roller Company v. Budinger,* 513 F.2d 982, 985 n. 3 (3d Cir. 1975).

prejudice by the action of its former attorney, Pullman's reliance upon them is misplaced. Indeed, neither the briefs nor my own research disclosed a single case precisely on point, i. e., where a named defendant sought to disqualify plaintiff's counsel on the ground that he also represented an entirely separate defendant. Mr. Stevens at no time was counsel for either Pullman or any other defendant, and the third-party defendant which he does represent, Lehigh, stated for the record that it has no objection whatever to his continued advocacy of plaintiffs' causes. Lehigh frankly conceded that from the outset it has cooperated with plaintiffs and aided and assisted them in the preparation of their claims against Pullman.

■ My review of the law on disqualifications of counsel reveals that courts invoke that remedy in two situations. First, disqualification is proper where it appears that the subject matter of a pending suit in which an attorney represents an interest adverse to a prior employer is such that during the course of the former representation he might have acquired substantially related material.[10] *American Roller Company v. Budinger*, 513 F.2d 982, 984 (3d Cir. 1975); *Richardson v. Hamilton International Corp.*, supra, 469 F.2d at 1385; *T. C. Theatre Corp. v. Warner Bros. Pictures*, supra, 113 F.Supp. at 268. Secondly, the remedy is appropriate where there may be the appearance of a possible violation of confidences, even though any impropriety may not in fact exist. *American Roller Compa-*

*ny v. Budinger*, supra at 984; *ABA Committee on Professional Ethics, Informal Opinion No. 885 (1965).*[11]

The cases cited in my order denying Pullman's motion both contained in my view nuances of conflicting interests totally lacking in the matter then before me. In *American Roller Company v. Budinger*, supra, one of plaintiff's attorneys, prior to his admission to the bar, had been employed in defendants' legal office for three and one-half years. In its motion to disqualify, the defendant averred that during those years counsel had prepared and prosecuted a number of patent applications pertaining to a certain material. Defendant theorized that the attorney's knowledge of that product's technology was closely related to the issues in the case in which he now represented an adverse interest, and that his prior exposure to confidential information rendered such representation ethically improper. 513 F.2d at 983–84. The district court denied defendant's motion, and with respect to the counts of the complaint which assumed the validity of defendant's patents and sought relief on other theories of liability, the court of appeals affirmed. *Id.* at 984–85.[12] And in *Silver Chrysler Plymouth, Inc. v. Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, supra, disqualification of the attorney representing plaintiff was sought on the basis of his prior association with the firm which had long represented defendants. During the course of that association, counsel's involvement with cases relating to the defendant automobile

---

**10.** Although an inference may arise that an attorney formerly associated with a firm received confidential information transmitted by a client to the firm, such inference is rebuttable. See, e. g., *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955), cert. denied 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, supra, 518 F.2d at 754.

**11.** Although Canon 9's precept that an attorney should avoid the appearance of professional impropriety dictates that doubt be resolved in favor of disqualification, it is not intended entirely to override the delicate balance created

by Canon 9's admonition that an attorney should preserve the confidences and secrets of a client. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, supra, 518 F.2d at 757.

**12.** With respect to those counts of the complaint challenging the validity of defendant's patents, the court of appeals remanded the case to the district court for application of the substantial relationship test, see, e. g., *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *American Roller Company v. Budinger*, supra, 513 F.2d at 985–86.

manufacturer included preparation of briefs, discussions of procedural matters, and research on points of law. The district court declined to disqualify plaintiff's counsel, and the court of appeals affirmed. Again, I would emphasize that although both of these cases involved instances where an attorney for a plaintiff actually had been employed by the moving defendant or its law firm—*a circumstance which never existed in instant proceeding*—absent the acquisition of substantially related knowledge as a result of such employment, disqualification was held to be unwarranted.

■ At the hearing on its motion, Pullman appeared to suggest that Mr. Stevens *might* have obtained confidential information at the December 10, 1974, meeting of Pullman, Cargill, and Lehigh representatives. Mr. Stevens testified that nothing disclosed at this conference by Pullman would in any way benefit plaintiffs in the suits now pending, and Pullman failed to challenge, much less contradict, his testimony. At any rate, any element of privilege or confidentiality surrounding the statements made by Pullman's representatives to Mr. Stevens, as a representative of Lehigh, would have been breached by Cargill's presence. Cf. *United States v. Blackburn*, 446 F.2d 1089 (5th Cir. 1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972); *United States v. Nasser*, 476 F.2d 1111 (7th Cir. 1973).

■ Pullman's final suggestion of impropriety centered on counsel's failure to institute an action on behalf of his clients against Lehigh under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq. Although it infrequently behooves this court to weigh the merits of an attorney's determination as to which of a bevy of potential defendants should be sued, Mr. Stevens' choice here seems strategically sound. Pullman implied at oral argument it will take the position that the accident here resulted from the utilization of an incorrect procedure during the rerailing. Inasmuch as Messrs. Jenkins and Baglini were primarily responsible for deciding how the car should be handled,[13] assuming arguendo that Pullman's theory is correct, in an FELA action, Lehigh could avail itself of the doctrine of contributory negligence.[14] In a products liability suit, however, such as that which plaintiffs instituted against Pullman and Cargill, recovery is not precluded by the user's own negligence; rather he must have known of the specific defect which caused his injury and voluntarily proceeded to use the product with knowledge of the danger posed by such a defect.[15]

Lastly, although I do not necessarily share counsel's belief that a jury conversant with the financial plight of many railroads in the northeastern United States, including the Lehigh, would be reluctant to award a sizeable judgment to his clients,[16] such a concern was not inappropriate in electing whether to proceed against Lehigh or other presumably more solvent parties.

At the hearing in this court, I explained to each of the plaintiffs the problem raised by Pullman's motion. I advised them that the accident provided them with at least an arguable claim against Lehigh, a claim which they were not pursuing in these ac-

---

**13.** Jenkins was the chief engineering officer of the Lehigh Valley Railroad, and Baglini was in charge of the rerailing operation at the time of the accident.

**14.** Although contributory negligence is not an absolute defense under 45 U.S.C. § 53, see, e. g., *Patterson v. Norfolk and Western Railway Company*, 489 F.2d 303 (6th Cir. 1973); *Cincinnati, N. O. & T. P. Ry: Co. v. Hall*, 243 F. 76, 155 C.C.A. 606 (6th Cir. 1917), it must be considered vis-a-vis diminution of damages, see, e. g., *Grand Trunk Western R. Co. v. Lindsay*, 233

U.S. 42, 34 S.Ct. 581, 58 L.Ed. 838 (1914); *Patterson v. Norfolk and Western Railway Company*, supra.

**15.** *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 901 (Pa.1975); *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 327, 223 A.2d 746, 748 (1966); Restatement (Second) of Torts § 402A, comment n.

**16.** [Plaintiff's] Brief in Opposition to Disqualify Counsel and Dismiss the Cause of Action 8–9.

tions. Each stated that he or she understood the situation, and that he or she was voluntarily not proceeding against Lehigh. All three also stated that they wished Mr. Stevens to remain as their counsel. I was satisfied that they freely and intelligently had elected not to proceed against Lehigh, and that they genuinely were satisfied with Mr. Stevens' representation and emphatically wanted him to remain their attorney.

 The right of the public to counsel of its choice is, of course, secondary to the paramount importance of maintaining the highest standards of professional conduct and the scrupulous administration of justice. *Silver Chrysler-Plymouth, Inc. v. Chrysler Motors Corp.,* supra, 518 F.2d at 757; *Hull v. Celanese Corp.,* supra, 513 F.2d at 569. Here, however, where the attorney sought to be disqualified had never represented or been privy to any confidential information of an objecting defendant, where sound strategy motivated his decision not to proceed against the potential defendant which he did represent, and where his clients, who, although fully cognizant of all the pertinent circumstances, wanted him to continue to represent them, I found neither the requisite conflict of interests nor the appearance thereof to merit disqualification. For these reasons, then, I denied Pullman's motion.