Maynard B. MELAMED, Trustee in Bankruptcy for Laub Baking Company, for Sandusky Baking Company, and for Jersey Bread Company, Plaintiff-Appellee,

v.

ITT CONTINENTAL BAKING COMPANY, a corporation, and International Telephone and Telegraph Corporation, a corporation, Defendants-Appellants.

No. 78-3181.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1978.

Decided Jan. 24, 1979.

Eric M. Oakley, Squire, Sanders & Dempsey, Cleveland, Ohio, John H. Schafer, III, Charles Lister, S. William Livingston, Jr., Covington & Burling, Margaret E. Clark, Washington, D. C., Gordon A. Thomas, Craig D. Walley, ITT Continental Baking Co., Inc., Rye, N. Y., for defendants-appellants.

Robert S. Balantzow, Nadler, Sokolsky, Bahas & Balantzow, Cleveland, Ohio, Stanley A. Walton, III, Winston & Strawn, Logan T. Johnston, III, Chicago, Ill., for plaintiff-appellee.

Before EDWARDS, Chief Judge, and PHILLIPS and PECK, Senior Circuit Judges.

EDWARDS, Chief Judge.

This is the second appeal in this antitrust litigation and to date (nearly four years after the filing of the complaint) not only has no trial on the merits of the antitrust action occurred, but, in addition, only limited discovery proceedings have been started.

What we deal with now is a second appeal from another order of another District Judge, entered after full evidentiary hearing, again denying the motion filed by defendant-appellant, Continental Baking Co., seeking disqualification of Stanley Walton, partner of the law firm of Winston & Strawn of Chicago, from representing plaintiff Trustee for Laub Baking. The disqualification was and is sought on the grounds of conflict of interest in that Winston & Strawn also represents two other large baking companies, Interstate Brands Corp. and Ward Foods, Inc., which, like Continental, have been competitors of the now bankrupt Laub Baking Company.

On the first appeal this court determined that:

[T]he district court's order denying Continental's motion for disqualification of Winston & Strawn is appealable at this stage of the proceedings as a final decision of the district court pursuant to 28 U.S.C. § 1291. While this precise issue has not previously been before this Court, other circuits considering the question have generally concluded that an order denying a motion for disqualification is appealable under 28 U.S.C. § 1291. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974) (en banc) (cases cited); see *Kroungold v. Triester,* 521 F.2d 763 (3d Cir. 1975); *Fullmer v. Harper,* 517 F.2d 20 (10th Cir. 1975); *Yablonski v. United Mine Workers,* 147 U.S.App.D.C. 193, 454 F.2d 1036 (1971) (dicta), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972); *Uniweld Products, Inc. v. Union Carbide Corp.,* 385 F.2d 992 (5th Cir. 1967), *cert. denied,* 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968). *Contra, Cord v. Smith,* 338 F.2d 516 (9th Cir. 1964).

*Melamed v. ITT Continental Baking Co.,* 534 F.2d 82, 84 (6th Cir. 1976).

We also determined that the District Court's order of denial of disqualification had been entered without a full evidentiary hearing and we remanded for such a hearing.

After full evidentiary hearing, District Judge Manos entered the following findings of fact:

On October 24, 1974 the trustee filed a 30 million dollar anti-trust action against Continental, which the Sixth Circuit described as follows:

The complaint, in four counts, alleges violations of the Sherman Act, 15 U.S.C. §§ 1, 2 (two counts), the Robinson-Patman Act, 15 U.S.C. §§ 13, 14, 15, 26 (one count), and the Ohio Valentine Act, Ohio Rev.Code § 1331.01 *et seq.* (one count as pendent claim to the federal causes of action). Generally, the plaintiff claims that, in an effort to create and maintain a monopoly in bakery goods in Northern Ohio and Southwestern Michigan, defendants (hereafter referred to collectively as "Continental") have engaged in "various predatory prices, discriminatory discounts, and price-wars." Further, plaintiff alleges that Continental "subsidized" its unprofitable marketing activity in the Northern Ohio and South-

eastern Michigan region by utilizing financial resources drawn from its more profitable, monopolistic marketing operations in other regions of the United States. On account of the asserted monopolistic practices, plaintiff alleges that Laub was forced out of business in January, 1974.

*Melamed v. ITT Continental Baking Co., supra,* 534 F.2d at 83.

It is undisputed that Continental was one of Laub's major competitors in Northern Ohio. It is also undisputed that Interstate Brands Corp. [Interstate] and Ward Foods Inc. [Ward] sold bakery goods in Northern Ohio at the time Laub went out of business. Like Continental, these two companies were major competitors of Laub's. However, only Continental was named as a defendant in this action.

Laub retained Stanley A. Walton of Winston & Strawn to represent it. From roughly 1970 to 1974, during which the claims in this lawsuit arose, Winston & Strawn represented both Interstate and Ward.[1] The work Winston & Strawn did

[1] Winston & Strawn have continued to this day to do legal work for Interstate and Ward.

for Interstate and Ward included anti-trust litigation, and Mr. Walton has personally counseled Interstate on certain anti-trust matters.

Our review of this record discloses no reason for us to hold that any of these findings are clearly erroneous. On the contrary, they appear to be fully supported by the record.

Judge Manos then entered the following conclusions of law:

Continental claims that Winston & Strawn's duty to protect the interest of Interstate and Ward conflict with their duty to represent Laub in the present suit. Continental argues that this suit would have joined Interstate, Ward and Continental as defendants if attorneys other than Winston & Strawn had been retained to represent Laub. Continental contends that Winston & Strawn's continued representation of Laub in this suit violates Canon 5 of the Code of Professional Responsibility and therefore Winston & Strawn should be disqualified.

Canon Five and pertinent Ethical Considerations promulgated thereunder read in part:

A lawyer should exercise independent professional judgment on behalf of a client.

Canon Five.

If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of this representation.

Ethical Consideration 5–15.

It has been repeatedly held that an attorney may not represent a client in litigation against a former client if the subject matter of the litigation is "substantially related" to work he or she did for the former client. *See e. g. Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 565 (2nd Cir. 1968); *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250, 252 (5th Cir. 1977); *T. C. & Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y. 1953). If the representation is against an existing client, not just a former one, the balance shifts even more significantly toward disqualification. *See Cinema 5, Ltd. v. Cinerama,* 528 F.2d 1384, 1386 (2nd Cir. 1976). Continental claims that Winston & Strawn in representing Laub, represents a party whose interests may be adverse to pre-existing clients, Interstate and Ward. The court agrees. However this fact, in and of itself, does not necessitate disqualification. *See Baglini v. Pullman Inc.,* 412 F.Supp. 1060, 1065, 1066 (E.D.Penn.1976); *Cannon v. U.S. Accoustics Corp.,* 398 F.Supp. 209, 219–220 (N.D.Ill.S.D.1975). A lawyer's duty to his client is that of a fiduciary or trustee. *See e. g. Hafter v. Farkas,* 498 F.2d 587, 589 (2nd Cir. 1974). He or she must give *undivided loyalty* to each

client. *See e. g. Von Moltke v. Gillies,* 332 U.S. 708, 725, 68 S.Ct. 316, 92 L.Ed. 309 (1948). A client can expect that an attorney will "accept no retainer to do anything that might be adverse to his client's interests." *See Cinema 5, Ltd. v. Cinerama, Inc., et al., supra,* 528 F.2d at 1386 [emphasis added]. In most situations the simple appearance of a conflict would be sufficient to cause this court to disqualify an attorney. *See* Canon 9 Code of Professional Responsibility. In this case however there is a crucial additional fact; the only party, who can be conceivably harmed by the potential conflict is Laub, which desires to keep its present counsel.

The court has found that Melamed and Balantzow were fully informed about any possible conflict of interest. Yet undisputably Melamed and Balantzow believe that the continued representation of Laub by Winston & Strawn is in the best interest of the trust. That there has been full disclosure weighs heavily against disqualification. *See Whiting Corp. v. White Machinery Corp.,* 567 F.2d 713, 715 (7th Cir. 1977); *Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d at 1386. Further Laub exercised an important public right in retaining Winston & Strawn; the right to the counsel of their choice, *see e. g. Woods v. Covington City Bank,* 537 F.2d 804, 810 (5th Cir. 1976); *Moritz v. Medical Protective Co. etc.,* 428 F.Supp. 865, 874 (W.D.Wisconsin 1977); *Baglini v. Pullman Inc., supra,* 412 F.Supp. at 1066. The knowing and intelligent exercise of the right to choose counsel, after full disclosure, will not be overturned by this court unless there is a convincing showing by the moving party of a real and substantial harm to the acquiescing party's interests.[3] *Baglini v.*

[3] If the other party represented by an attorney with a possible conflict of interest did not acquiesce after full disclosure in allowing the

dual representation and its interests could possibly be adversely effected then the normal "substantial relationship" rule would apply. In this case the court finds that the continued representation of Laub by Winston & Strawn in this suit against Continental can in no conceivable way adversely effect the interests of Ward or Interstate.
(Footnote 2 omitted.)

*Pullman Inc., supra,* 412 F.Supp. at 1064–1066. The court finds that Continental has not established a real and substantial disadvantage that would be caused to Laub by the continued representation of Laub by Winston & Strawn. Accordingly the motion to disqualify is overruled.

We find no reason to fault the District Judge's legal reasoning, and we affirm his conclusions.[1]

When this case was first before us, this court had no way of knowing what stake, if any, appellant Continental had in contesting appellee's choice of counsel. After the hearing and decision of the District Court, we are now fully informed. Judge Manos' findings include the following:

Maynard Melamed, an attorney, is the trustee for the bankrupt company. Robert Balantzow, also an attorney, was retained by Melamed to handle proceedings in the bankruptcy court.

At the hearing on the motion to disqualify Melamed testified that he retained Winston & Strawn to represent the trust in the anti-trust matter, on the recommendation of Balantzow. Melamed also testified that prior to retaining the firm as counsel, Winston & Strawn made a full disclosure to him about their relationship to Interstate and Ward. Melamed made it clear in his testimony that despite the facts disclosed about Winston & Strawn's relationship with Laub's competitors he wished to retain Winston & Strawn as counsel for Laub.

Robert Balantzow testified that he recommended retaining Winston & Strawn

1. We observe that the *Baglini* case cited by Judge Manos has now been affirmed by order of the Third Circuit. *Baglini v. Pullman, Inc.,* 412 F.Supp. 1060 (E.D.Pa.1976), *aff'd without published opinion,* 547 F.2d 1158 (3d Cir. 1976). Nonetheless, we also observe that while the

District Court opinion therein recites law which does lend support to the result in our instant case, we do not cite *Baglini* as authority approved by this Circuit as to *its* facts as we can glean them from the District Court opinion.

to Melamed because that firm handled the Continental Baking Co. v. Old Homestead Baking case. *See Continental Baking Co. v. Old Homestead Baking Co.,* 476 F.2d 97 (10th Cir. 1973). Balantzow also testified that he had been fully informed about the attorney-client relationship existing between Winston & Strawn and Interstate and Ward before he recommended that the trustee retain the services of that firm. He also testified that Mr. Walton had assured him that if, in his investigation of the case he found any anti-trust claim against either Ward or Interstate, his firm would withdraw from the case. Balantzow further testified as follows:

> It was when we sought to retain you [Mr. Walton], your firm, we need the approval of the bankruptcy judge, Judge Don Miller.

> At the time I presented the motion on application to engage you, I went in to see the judge to advise him of our meetings, the claims, Winston & Strawn's former representation and present representation of Interstate and Ward Foods, and the fact that we had a meeting with Stonebraker, Beyer, the former counsel for Laub, Mr. Stonebraker's attorney and you at which time all of this was disclosed not only to me but to Mr. Beyer and Mr. Stonebraker, as well as their attorneys and Laub's attorney to see if there was any possible claim to be asserted against Ward or Interstate.

Balantzow stated categorically that in his judgment it would be in the best interests of the trust to keep Winston & Strawn as its counsel.

Stanley Walton's testimony was the same as the testimony of Melamed and Balantzow concerning the completeness and timeliness of the disclosure by Winston & Strawn of its relationship with Interstate and Ward. He also testified that prior to Winston & Strawn being

retained by Laub, a list of Laub's assets filed in bankruptcy court included an anti-trust suit against Continental only. He further testified that he conducted an investigation into the possibility of filing an anti-trust action against Laub's competitors and found that the only party Laub had a claim against was Continental.

The court finds that full disclosure was made to Melamed and Balantzow about Winston & Strawn's relationship with Interstate and Ward before they were retained to represent the trust in this action. The court also finds that notwithstanding the relationship of Winston & Strawn to Interstate and Ward, Melamed and Balantzow still wanted Winston & Strawn to continue as their counsel. *Finally the court finds that the only conceivable party whose interests could be adversely affected by Winston & Strawn's representation of Laub are those of Laub.*

(Emphasis added.)

■ It is our conclusion that while Continental's counsel in this litigation had a right and arguably a duty to call the attention of the District Judge to the possible conflict of interest in this case,[2] this fact should not be construed as automatically granting a right to an appeal of a denial of disqualification where, as here, the facts after full evidentiary hearing show the would-be appellant cannot show a possibility of injury.

Our reliance for appealability in *Melamed I* was on *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The holding of that case was:

> We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. But we do not mean that every order fixing security is subject to appeal.

---

2. See ABA Code of Professional Responsibility DR1–103 which states:

   A lawyer possessing unprivileged knowledge of a violation of DR1–102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.

Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question. *Id.* at 546, 69 S.Ct. at 1226.

We have, of course, in our instant case granted appellant Continental standing to appeal and now have heard and denied its appeal on the merits. For these purposes we have recognized *Melamed I, supra,* and this court's denial of a motion to dismiss the instant appeal as the law of this case. But the egregious delay which has occurred and may reoccur in similar cases, has caused reconsideration of one of the important views expressed in *Melamed I, supra.* Our experience with this case, plus a careful review of authority cited on both sides of the issue of appealability, shows a great possibility of abuse of the motion to disqualify an opponent's counsel. In many cases the defending party has a great stake in delay. Motions to disqualify an opponent's counsel can easily be simply "disguised harassment." [3]

■ In future cases where a District Court has heard a motion to disqualify an opposing party's counsel, has denied said motion on the merits after evidentiary hearing, and has (as here) entered a finding to the effect that the moving party cannot be injured by the challenged representation, we shall dismiss, as interlocutory, any appeal *from denial of disqualification* brought under 28 U.S.C. § 1291 (1976).[4]

We recognize by establishing this ruling for the Sixth Circuit we are overruling this court's previous acceptance in *Melamed I, supra,* of *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974) (en banc). · We also recognize that we

hereby join a minority of Circuit Courts on this issue. *See Community Broadcasting of Boston, Inc. v. FCC,* 178 U.S.App.D.C. 256, 546 F.2d 1022 (1976); *Cord v. Smith,* 338 F.2d 516 (9th Cir. 1964), *clarified,* 370 F.2d 418 (9th Cir. 1966). *Contra, Silver Chrysler, supra; Greene v. Singer Co.,* 509 F.2d 750 (3d Cir. 1971), *cert. denied,* 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972); *MacKethan v. Peat, Marwick, Mitchell & Co.,* 557 F.2d 395 (4th Cir. 1977); *Tomlinson v. Florida Iron & Metal, Inc.,* 291 F.2d 333 (5th Cir. 1961); *Schloetter v. Railoc of Ind., Inc.,* 546 F.2d 706 (7th Cir. 1976); *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602 (8th Cir. 1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978); *Fullmer v. Harper,* 517 F.2d 20 (10th Cir. 1975).

In *Community Broadcasting, supra,* the D.C. Circuit canvassed this field and concluded:

We think it appropriate at this time to announce a general rule applicable to all appeals from orders denying motions to disqualify counsel on ethical grounds. We decline to adopt the approach taken by the Second Circuit and other circuits that have embraced *Silver Chrysler.* A rule allowing interlocutory appeals here would provide litigants with yet another device by which to delay final determination on the merits, and would lead the court to divert its attention from the central issues in the case.

The experience of the Second Circuit since its decision in *Silver Chrysler* highlights the wisdom of adhering to the finality requirement. As Judge Moore predicted in *Silver Chrysler,* charges of conflict of interest and motions to disqualify have not abated in that circuit. Indeed, because of the fluidity of membership in large metropolitan law firms and the pattern of movement by lawyers between various employment positions, an appearance of conflict of interest can easily be

---

**3.** Note, *The Appealability of Orders Denying Motions for Disqualifications of Counsel in the Federal Courts,* 45 U.Chi.L.Rev. 450 (1978).

**4.** This holding does not apply to appeals based on a District Court certification of a controlling question of law under 28 U.S.C. § 1292(b) (1976). And, of course, it would not exclude the filing of a petition for writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a) (1976).

alleged in many cases. As a result the Second Circuit is now grappling with a deluge of interlocutory appeals that would cast the Court of Appeals in the role of overseer of the ethics of members of the legal profession. Although *Silver Chrysler* purported to fashion an across-the-board principle governing disqualification orders, application of that principle inevitably requires a case-by-case examination of the merits of each order. Apparently in response to the resulting flood of interlocutory appeals, the *Silver Chrysler* decision has been followed in the Second Circuit by a series of cases narrowing the substantive grounds for disqualification.

We believe our position denying interlocutory appeal of orders refusing to disqualify counsel to be fully consonant with the Supreme Court's holding in *Cohen*. Although "collateral" to the main proceeding, an order denying a motion to disqualify does not, in most cases, implicate any claim of right that will be irreparably lost on appeal from final judgment. In the exceptional case, where irreparable harm would indeed result, the movant may petition this court for a writ of mandamus under 28 U.S.C. § 1651 (1970), the All Writs Act. This approach will afford the court the flexibility necessary to prevent serious injustice while advising litigants of the court's extreme reluctance to depart from the final judgment rule.

*Community Broadcasting, supra,* 178 U.S. App.D.C. at 260–262, 546 F.2d at 1026–28 (footnotes omitted).

We agree with the reasoning of the D.C. Circuit's per curiam opinion just quoted and adopt its result for future such cases in this Circuit.

The judgment of the District Court is affirmed.