In re Wayne G. BUCHANAN, a/k/a Asbery Buchanan, and Carolyn G. Buchanan, Debtors.

In re Don A. MORTON, Debtor.

Leon STEINBERG, Trustee and Douglas Q. Wickham, Trustee, Plaintiffs,

v.

Don MORTON; Michael Max Talley and wife, Eleanor Jean Talley; William Roger Phillips and wife, Gwendolyn Phillips; David F. Hill; Robert N. Navratil, Trustee, Defendants.

Bankruptcy Nos. 3-82-00037, 3-82-00489. Adv. No. 3-82-0128.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 29, 1982.

Goddard & Gamble, Carl P. McDonald, Maryville, Tenn., for plaintiffs.

Perry P. Paine, Jr., Maryville, Tenn., for defendants Michael Max Talley, Eleanor Jean Talley, William Roger Phillips, and Gwendolyn Phillips.

Mack Garner, Maryville, Tenn., for defendant Don Morton.

Horace M. Brown, Maryville, Tenn., for debtors Wayne G. Buchanan and Carolyn Buchanan.

Bird, Navratil & Bird, Frank B. Bird, Maryville, Tenn., for defendant Robert N. Navratil, Trustee.

Meares & Meares, P.C., Rom Meares, Maryville, Tenn., for defendant David F. Hill.

Poore, Cox, Baker, Ray & Byrne, W. Edward Parrott, Knoxville, Tenn., for Meares & Meares.

## MEMORANDUM AND ORDER ON MOTION TO DISQUALIFY

CLIVE W. BARE, Bankruptcy Judge.

At issue is the propriety of the continued representation by Meares & Meares of David F. Hill, a/k/a Dave F. Hill, a party defendant, in this adversary proceeding commenced by Leon Steinberg, trustee for the bankruptcy estate of Wayne G. Buchanan and his wife, Carolyn Buchanan, to avoid a previous nonjudicial foreclosure sale. The trustee in bankruptcy for the Buchanans (Mr. Steinberg), the trustee in bankruptcy for Don A. Morton (Mr. Wickham), and the debtors contend that the law firm of Meares & Meares should be disqualified from representing Dave F. Hill, or any other defendant in this case, due to conflicts of interest. Rom Meares denies there is any conflict of interest or danger of disclosure of confidence. It is Meares' contention that the issues in the instant proceeding are unrelated to those involved in any previous representation by Meares & Meares of any party with a stake in the outcome of this case.

### I

Leon Steinberg was appointed as trustee when Wayne G. Buchanan and Carolyn Buchanan filed their joint chapter 7 bankruptcy petition on January 12, 1982. Mr. Steinberg, as trustee, filed a complaint on February 23, 1982, seeking the avoidance of the September 10, 1979, nonjudicial foreclosure sale of the "Simple Simon" property.[1] It is alleged that this foreclosure sale is a preferential transfer, voidable under 11 U.S.C.A. § 547(b) (1979), and a fraudulent conveyance, avoidable under both 11 U.S.C.A. § 548 (1979) and Tenn.Code Ann. § 64–301 (1976).[2]

The Simple Simon property was previously owned jointly by the Buchanans and Don Morton, their former business partner. Morton, who was named as a party defendant in this adversary proceeding, has also filed a chapter 7 bankruptcy petition. His voluntary petition was filed on April 7, 1982.

By an Order of this court dated June 18, 1982, Douglas Q. Wickham, trustee for Morton's bankruptcy estate, replaced Morton as a party in this adversary proceeding. Since the avoidance of the challenged sale would mutually benefit the creditors of Morton and the Buchanans, Wickham has been realigned as a party-plaintiff.[3]

---

1. The Simple Simon property is a 1.2-acre tract in Blount County upon which the Simple Simon Restaurant was open for business until it was destroyed by fire on January 21, 1979.

2. This statute has been recodified as Tenn.Code Ann. § 66–3–101 (1982).

3. The Order of June 18, 1982, also provided for the modification of the automatic stay to allow the trustee for the Buchanan's estate to proceed to judgment on a claim of the Buchanans against Morton. However, the Order provided for a severance of that claim from the trial of the claim against the remaining defendants.

## II

A narration of the underlying facts, predicated upon affidavits, depositions, and exhibits, is necessary. In 1971, Michael Max Talley and his wife, Eleanor Jean Talley, and their business partners, William Roger Phillips and Gwendolyn Phillips, also husband and wife, purchased a 2.8-acre tract from J. Leon Teffeteller, R.H. Hitch, and their wives. A deed of trust note in the amount of $124,000.00 and a first deed of trust were executed in consideration of the conveyance of the 2.8-acre tract. Five years later, in 1976, the same 2.8-acre tract was conveyed to Charles J. Talley[4] and Judith T. Talley, his wife. The consideration was the assumption of the unpaid first mortgage indebtedness and the execution of a $15,000.00 note, with payments thereon to commence one month after the last payment was due on the $124,000.00 note. This $15,000.00 note was secured by a second deed of trust against the tract.

A portion of the 2.8-acre tract upon which the Simple Simon Restaurant was situated was conveyed by Charles J. Talley and Judith T. Talley to Wayne Buchanan, Carolyn Buchanan, and Don Morton (debtors) by warranty deed, dated October 11, 1977, and received for recordation on October 26, 1977. The debtors executed their promissory note in the amount of $142,000.00 and a third deed of trust against the Simple Simon property in favor of their grantors.

After the policy which the debtors had initially obtained to insure the Simple Simon Restaurant was cancelled, either Wayne Buchanan or Don Morton, or both, contacted Gerald C. Russell, an attorney in Maryville, about procuring insurance. Coverage effective January 18, 1979, in the amounts of $150,000.00 on the building and $50,000.00 on its contents was obtained on behalf of the debtors and their mortgagees from Travelers Insurance Company. The Simple Simon Restaurant was destroyed by fire on January 21, 1979.

According to his affidavit, Wayne Buchanan accompanied Don Morton on a visit to the law offices of Meares & Meares during the latter part of January or early part of February of 1979. Arrangements were made for Rom Meares to represent the debtors for the purpose of collecting the insurance proceeds purportedly due from Travelers on account of the fire loss. Rom Meares agreed to represent the debtors and became privy to the events leading up to the debtors' purchase of the Simple Simon Restaurant, their financial liabilities, and their acquisition of insurance.

On May 8, 1979, a declaratory judgment action was commenced by Travelers in the Circuit Court of Blount County. Travelers alleged that the debtors made material misrepresentations in connection with their application for insurance coverage for the Simple Simon Restaurant and requested that the policy be voided. On June 29, 1979, Rom Meares represented the debtors at the discovery depositions of Gerald C. Russell, who had been instrumental in obtaining the insurance policy for the debtors from Travelers, and Barbara Grubb, an underwriter for Travelers. On August 16, 1979, in response to the complaint of Travelers, an answer and counter-complaint was filed on behalf of the debtors by Rom Meares. On November 21, 1979, Meares filed a motion to withdraw from his representation of the debtors. An order permitting his withdrawal from the case was entered on December 11, 1979.

Meares notified Wayne Buchanan by letter of his intention to terminate his representation of the debtors. Quoting from Buchanan's affidavit:

> After receiving the letter Mr. Morton and myself visited Mr. Meares and he advised that he did not see any money in the case, therefore he was withdrawing. There was never any other discussion by Mr. Meares as to why he could not continue representing myself and Don A. Morton.

After Meares' withdrawal, the debtors retained the law firm of Crawford & Crawford to represent them in the declaratory action. The counter-complaint of the debt-

---

4. Charles J. Talley and Michael Max Talley are brothers.

ors was sustained, and judgment was entered against Travelers on August 18, 1980. Ultimately, Travelers paid in excess of $200,000.00 into the registry of the Blount County Circuit Court in satisfaction of its liability. All of the liens against the Simple Simon property were satisfied through the disbursement of the insurance proceeds distributed pursuant to an Order of the circuit court dated October 28, 1980. Additionally, the debtors and their attorney in the declaratory action, Duncan V. Crawford, received a check dated October 28, 1980, in the amount of $34,817.53.

On or about June 6, 1979, less than one month after the commencement of the declaratory action by Travelers, Frank B. Bird, the law partner of Robert N. Navratil, trustee of the second deed of trust against the Simple Simon property, prepared the following notation across the bottom of the $15,000.00 deed of trust note executed by Charles J. Talley and Judith T. Talley and held by Michael Max Talley, William Roger Phillips, and their wives:

TO: CHARLES J. AND JUDITH T. TALLEY

June 6, 1979

Pursuant to the terms thereof, we exercise our option to declare the entire balance due and payable at once.

Michael Max Talley
Eleanor Jean Talley
William Roger Phillips
Gwendolyn Phillips
By: /s/ Michael Max Talley
/s/ Wm. R. Phillips

Received a copy of the above this the 6 day of June, 1979, and agree that the grounds for the exercise of this option exists.

/s/ Charles J. Talley
Charles J. Talley, for self & wife

Bird cannot remember whether the acknowledgment that grounds existed for the acceleration was signed by Charles J. Talley in his presence.

Bird had been contacted about foreclosing the second deed of trust against the Simple Simon property because the Talleys and Phillipses, as first mortgagors, were making payments to the first mortgagees due to the default of the second and third mortgagors.[5] Furthermore, property taxes were unpaid, tax liens had been filed, and the existence of insurance coverage for the fire loss was being contested.

The Simple Simon property was sold subject to the outstanding first mortgage at the trustee's September 10, 1979, foreclosure sale to Michael Max Talley and William Roger Phillips and their wives on the basis of a bid of $1.00.[6] The unpaid balance on the first mortgage was approximately $95,000.00 and the fair market value of the property sold was between $60,000.00 to $70,000.00 at or about the time of the trustee's sale, according to the July 20, 1979, affidavit of Michael Max Talley and William Roger Phillips. However, the September 10, 1979, Trustee's Deed conveying the property was not recorded until more than one year later, on October 30, 1980, two days after the circuit court Order which provided for the disbursement of the insurance proceeds. The delay in recordation is unexplained in the present record.[7]

The following excerpt from the April 29, 1982, deposition of Michael Max Talley explains the involvement of the defendant Dave F. Hill in this case:

5. Michael Talley's wife, Eleanor Talley, is the daughter of R.H. Hitch and his widow, Kathleen Hitch. According to the deposition of William Roger Phillips, R.H. Hitch was ill at the time of the default on payments by the second mortgagors, Charles and Judith Talley, and the third mortgagors, the debtors. The first mortgagors did not want to risk upsetting R.H. Hitch so they made the payments due on the $124,000.00 note and accelerated the payment due on the $15,000.00 note which they held to enforce the second deed of trust, as opposed to

defaulting themselves and requiring acceleration by the first mortgagees.

6. Notice of the trustee's sale was forwarded by certified mail to the Buchanans and Morton at their last known addresses. The notices were both returned unclaimed.

7. Michael Max Talley, when asked about the delay in recordation during a deposition proceeding, replied that he had no idea why the delay had occurred.

Q Mr. Paine has provided to us, Mr. Talley, a copy of a Warranty Deed, which I show you, and ask if you have seen that before and what can you tell us about it? (The Warranty Deed is a deed of the Simple Simon property in favor of the debtors. It is dated October ____, 1980.)

A Well, immediately after the settlement—after the decision by the Judge on the part of the insurance, we received our settlement. And then Mr. Buchanan and Mr. Morton came to me and said that they felt like that we had been overcompensated and that they deserved something out of it and they had a buyer for the piece of property and I talked to my partner about it and we decided that possibly they were right and we told them what we would take and if they could make some money in it, fine. And we made this deed back—for the property, back to them, and they gave us a cashier's check, which you have.

Q Now, when you say "they"—as you know, Mr. Paine has also given us a copy of a cashier's check drawn on the Bank of Maryville—

A Uh-huh.

Q —in the amount of $22,500.00, payable to you, with the remitter being Hill Brothers Construction Company—

A Right.

Q Is that what you and Mr. Phillips shared in connection with the deed which you have in front of you?

A Yes sir, sure is. They had some kind of agreement with—by "they"—Mr. Buchanan and Mr. Morton had some kind of agreement' worked out with Mr. Hill—he gave us this check—it was a cashier's check, it was same as money, I didn't question it, I took it and we gave him the deed—I was glad to get out of it.

Q What was your disbursement among you and Mr. Phillips?

A Down the middle.

Q So half of that $22,500.00 check was for you and your wife and half was for Mr. Phillips and his wife?

A Yes.

Q Was there some reason, Mr. Talley, why you'll just didn't prepare a Warranty Deed from yourself and Mr. Phillips straight to Mr. Hill, since he was the purchaser?

A Yes, sir.

Q What was the reason?

A We didn't trust these guys.

Q Including Mr. Hill?

A Mr. Hill we trust.

Q Then why didn't you give the deed to Mr. Hill?

A Because we wanted Mr. Buchanan and Mr. Morton to get the property back—that's what they wanted and that's what we wanted.

Q I am not trying to argue with you, but I don't understand why it was important that it get back in the hands of Mr. Morton and—

A Because we are sitting here today— you understand that Mr. McDonald.

Q So the conveyance then to Mr. Morton and Mr. and Mrs. Buchanan was to put the property back in their hands for the sale to Mr. Hill?

A Yes, sir.

The deed from the Talleys and Phillipses to the debtors was acknowledged on October 31, 1980, by R.J. Talley, the father of Michael Max Talley. According to Michael Max Talley, this deed was executed at his father's apartment, which is just down the street from Hill's car lot. It is Talley's deposition testimony that he delivered the deed to Buchanan, Morton and Hill.

Talley's testimony relative to the delivery of the deed is inconsistent with the contentions of the defendant Dave F. Hill. In his Answer and his Response to Plaintiffs' Requests for Admission, Hill alleges that the deed from the Talleys and Phillipses to the debtors was delivered to his son, David T. Hill, and that the deed was never delivered

to either Buchanan or Morton. Hill also alleges that the deed in favor of the debtors, which has not been recorded, is in the possession of Rom Meares.

There is a second unrecorded warranty deed to the Simple Simon property dated October ____, 1980, and acknowledged on October 30, 1980, by David T. Hill. The grantors in this second deed are the debtors; Dave F. Hill is the grantee. Defendant Hill alleges that this second deed was also delivered to his son, David T. Hill, by Michael Talley, on either October 30th or 31st.

### III

Another series of event unrelated to those outlined in Section II but apposite in resolving the present issue must also be examined. A final decree of divorce dissolving the marriage of the debtor Don Morton and Carma Leeta Morton was filed in Blount County on October 31, 1977. The debtor Morton was required to pay child support by the terms of the decree. A motion requesting that the debtor Morton be ordered to show cause why he should not be found in contempt for failure to make the support payments was filed on February 20, 1982, in Blount County Circuit Court, on behalf of Carma Leeta Morton by Martha Meares, of Meares & Meares. Since Martha Meares and Mack Garner, the attorney for the debtor Morton, thought that they had reached an amicable settlement, the motion was not presented in court. However, the parties subsequently found that there was some misunderstanding when an attempt was made to reduce their "agreement" to writing. Martha Meares suggested that the matter of the motion be held in abeyance until such time as it was determined whether Don Morton would be entitled to any proceeds in the instant adversary proceeding.

According to the affidavit of D. Kelly Thomas, Jr., an attorney in Maryville, Martha Meares telephonically contacted him about representing Carma Leeta Morton during the latter part of July of 1982. Martha Meares informed Thomas that she did not intend to continue to represent Carma Leeta Morton because the issue of conflict of interest had been raised by Carl P. McDonald, attorney for the plaintiff trustees in the instant case. An order whereby D. Kelly Thomas, Jr., was substituted for Martha Meares as counsel for Carma Leeta Morton was filed on August 30, 1982, in Blount County Circuit Court.

### IV

Motions to disqualify the firm of Meares & Meares from representing any defendant in this adversary proceeding have been filed by the plaintiff trustees and by the debtors. It is contended that a conflict of interest exists between the present representation of Dave F. Hill by Rom Meares and Meares' former representation of Wayne Buchanan and Don Morton in the Travelers' declaratory judgment action involving the Simple Simon property. The movants assert that a substantial relationship exists between the subject matter in the instant proceeding and the facts in the Travelers' declaratory action. Meares & Meares dispute that assertion.

The movants also allege a second conflict of interest due to the former representation of Carma Leeta Morton by Martha Meares. Carma Leeta Morton is a creditor of the debtor Don Morton, and it is in her best interest that the plaintiff trustees succeed in their attempt to set aside the challenged foreclosure sale. On the other hand, it is in the best interest of Dave F. Hill, a remote grantee of the property which is the subject of the challenged sale, that the plaintiffs fail. An affidavit of Carma Leeta Morton has been filed in which she affirmed that she understands that Meares & Meares presently represents defendant Hill in this case, that she might benefit financially if the plaintiff trustees are successful, that her former husband and the trustees object to the representation of defendant Hill by the firm of Meares & Meares, and that she has no objection or reservation to the representation of Dave F. Hill by Meares & Meares.

The affidavits of Rom Meares and Perry P. Paine, Jr., among others, have also been filed in response to the motions to disqualify. Rom Meares affirms that the firm of Meares & Meares represented Carma Leeta Morton at the time his firm was retained to represent Mr. Hill but that he was unaware that Martha Meares represented Carma Leeta Morton when the firm was employed by Mr. Hill. He further affirms that the issues in the instant case, in his opinion, are not so related to the issues presented in either his former representation of the debtors in the Travelers' declaratory action or the former representation of Carma Leeta Morton by Martha Meares, his sister, "as to give rise to any conflict of interest or possible disclosure of confidences and/or secrets of a former client."

Perry P. Paine, Jr., is the attorney for defendants Michael Max Talley and William Roger Phillips and their wives. Mr. Paine states that, in his legal opinion, no issue is raised by his clients in the instant case which in any way relates to the issues involved in the previous Travelers' declaratory action and that Meares & Meares had no involvement in the challenged foreclosure proceedings instituted by his clients.[8]

Finally, the affidavit of Dave F. Hill has also been filed. Mr. Hill avers that he is aware that Meares & Meares formerly represented the debtors and Carma Leeta Morton in two unrelated cases and that he desires to be represented by Rom Meares despite the requests that Meares & Meares be disqualified in this case.

## V

■ The competing interests associated with a motion to disqualify counsel require balancing the right of a party to be represented by counsel of his choice and the right of an attorney to be gainfully employed in the representation of his client against the professional and the public interest in maintaining a standard devoid of even the appearance of any impropriety. If there be any doubt in ruling on a motion to disqualify, the doubt should be resolved in favor of disqualification. *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978).

### Previous Representation of the Debtors by Rom Meares

■ As a general rule, an attorney who has acted on behalf of a client may not thereafter undertake to represent another client whose interests are adverse to those of the former client. 52 ALR2d 1243, 1247. One purpose of this general rule is to safeguard the confidential relationship between an attorney and his client. The client must enjoy the freedom of confiding in his attorney without fear of the subsequent adverse use or disclosure of confidential information. The attorney generally must not undertake representation of a party whose interest is adverse to the interest of the former client because there is a potential for a division of loyalty and an appearance of impropriety. The attorney may either consciously or unconsciously jeopardize the interest of the former client to the advantage of the second client by utilizing information communicated in confidence by the former client. Such misuse of confidential information is clearly unethical. Canon 4 of the Code of Professional Responsibility states: "A lawyer should preserve the confidences and secrets of a client." [9]

■ A motion to disqualify should be sustained if a substantial relationship exists between the matters involved in the former representation of a client and those in a pending suit in which the interest of a second client is adverse to that of the first client. *Wilson P. Abraham Constr. Co. v.*

8. Mr. Paine filed a complaint on March 5, 1980, on behalf of Michael Max Talley, Eleanor Jean Talley, William Roger Phillips, and Gwendolyn Phillips against Travelers Insurance Company averring their status as mortgagees of the Simple Simon property, the destruction thereof by fire, and the liability of Travelers based on a binder for a fire insurance policy. This matter was consolidated for trial with the Travelers' declaratory judgment action.

9. The Code of Professional Responsibility as adopted by the Tennessee Supreme Court is codified as Rule 8 of the court.

*Armco Steel Corp.,* 559 F.2d 250, 252 (5th Cir.1977); *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 570 (2d Cir.1973); *T.C. & Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953). Establishment of such a "substantial relationship" is ordinarily sufficient to require disqualification. *General Elec. Co. v. Valeron Corp.,* 608 F.2d 265 (6th Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290, 292 (6th Cir.1979). Circuit Judge Edwards noted in *Melamed* that the simple appearance of a conflict would require disqualification in most situations.[10]

Meares & Meares contends that the substantial relationship standard involves a three-step analysis formulated by the Seventh Circuit Court of Appeals:

> Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 225 (7th Cir.1978).

Rom Meares undertook to represent the debtors in either January or February of 1979 to enforce an insurance binder and recover proceeds allegedly due from Travelers for the fire loss of the Simple Simon Restaurant. At or about the same time that Meares attended discovery depositions and prepared a pleading on behalf of the debtors, Robert N. Navratil was preparing to enforce a second deed of trust against the Simple Simon property on behalf of the Talleys and the Phillipses. Despite the fact that the debtors were the owners of the Simple Simon property, there is no evidence in the record that the debtors had knowledge of the scheduled September 10, 1979, trustee's sale or that any action was taken by Meares & Meares on their behalf in connection with that sale.[11] The present record indicates that the activity of Meares & Meares on behalf of the debtors was limited to conferences with them and the attendance of deposition proceedings and preparation of a pleading on their behalf by Rom Meares. Meares continued to be the attorney of record for the debtors in the declaratory action commenced by Travelers until December 11, 1979.

The debtors fully cooperated with Rom Meares during the period of their representation by Meares & Meares. They fully disclosed their financial interests and the facts connected with their ownership of the Simple Simon property, according to the uncontroverted affidavit of Wayne Buchanan.

Although the debtors apparently confided in Rom Meares, it is not apparent whether the information they furnished about the Simple Simon property is relevant to the issues in this action to set aside the September 10, 1979, trustee's nonjudicial foreclosure sale. Some relevance may exist by virtue of the fact that the identical property is involved. However, beyond that, any determination of relevance or irrelevance by the court would necessarily be based upon conjecture since the court is not privy

---

**10.** *Melamed* involved a motion to disqualify a law firm chosen to represent the plaintiff trustee in bankruptcy for Laub Baking Co. in an antitrust action against Continental Baking Co., a major competitor of Laub. Continental was disturbed by the fact that the law firm for the plaintiff represented two other major competitors of Laub. Continental contended that the two other major competitors would have been named as co-defendants in the antitrust action were it not for the existence of an attorney-client relationship between those two competitors and the law firm representing the plaintiff.

Laub and the trustee in bankruptcy both agreed that retention of the challenged law firm was in their best interest. The court of appeals concluded that disqualification was unnecessary since the only party whose interest might be adversely affected was Laub. *Melamed,* 592 F.2d at 293.

**11.** As previously noted in footnote 6, notices of the trustee's sale to enforce the second deed of trust were sent by certified mail to the debtors and were returned as unclaimed.

to the particular information given to Meares & Meares by the debtors.

### Previous Representation of Carma Leeta Morton by Martha Meares

Carma Leeta Morton was a client of Meares & Meares when Dave F. Hill, whose interest is adverse to that of Carma Leeta Morton, contacted Rom Meares about representing his interest in this adversary proceeding. Rom Meares has affirmed that he was unaware that his firm represented Carma Leeta Morton when he was retained as counsel by Mr. Hill. There is no evidence in the record to suggest that Meares & Meares withdrew from its representation of Carma Leeta Morton for any reason other than the challenge of the trustee in bankruptcy based on an alleged conflict of interest between the interest of Carma Leeta Morton and that of the defendant Hill.[12]

The Code of Professional Responsibility DR 5–105—*Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer*—recites in part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

It was incumbent upon Meares & Meares to withdraw from either its representation of Carma Leeta Morton or Dave F. Hill since the interests of those clients are diametrically opposed to one another in the instant proceeding. It is obvious that it is ethically impermissible for two members of the same law firm to represent parties with diametrically opposed interests.

Furthermore, it appears that Meares & Meares should have declined the proffer of employment by Mr. Hill, since his interest was opposed to the interest of an existing client on the date of the proffered employment. However, Rom Meares, being unaware of the representation of Carma Leeta Morton by his partner, Martha Meares, agreed to represent Mr. Hill in this controversy.

### VI

█ Canon 9 of the Code of Professional Responsibility provides that: "A lawyer should avoid even the appearance of professional impropriety." It is the conclusion of the court that permitting Meares & Meares to continue to participate as counsel in this proceeding would undermine the confidence of the public in the judicial system. The cumulative effect of the former representation of the debtors by Rom Meares, simultaneous with the occurrence of the challenged sale, and the withdrawal from representation of Carma Leeta Morton by Martha Meares and the present representation of Dave F. Hill, whose interest is opposed to the interests of the debtors and Carma Leeta Morton, results in an appearance of impropriety.

The information furnished by the debtors to Rom Meares in 1979, during the existence of the attorney-client relationship,

12. The record indicates that Carma Leeta Morton consented to substitution of counsel in her cause of action against her former husband.

There is no evidence suggesting that the withdrawal by Martha Meares created any hardship for Carma Leeta Morton.

may have little, if any, relevance in the instant litigation. However, the court must not allow an attorney to represent a party with an interest adverse to that of a former client in a case involving both parties if the attorney may have acquired information which might either consciously or unconsciously be used to the disadvantage of the former clients. *See Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir. 1973).

It is the duty of this court to disqualify the firm of Meares & Meares from participation as counsel in this case.

IT IS SO ORDERED.

This Memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.