**THE RAVENSWOOD INVESTMENT COMPANY, L.P., Robotti & Company, Incorporated, and Robotti & Company, L.L.C., Plaintiffs,**

v.

**BISHOP CAPITAL CORP., Robert E. Thrailkill, Robert J. Thrailkill, and Sherry L. Moore, Defendants.**

No. 05–CV–027B.

United States District Court, D. Wyoming.

June 29, 2005.

Gay Vanderpoel Woodhouse, Gay Woodhouse Law Office, Lori Lynn Brand, Gay Woodhouse Law Office, Cheyenne, Matthew J Day, Law Office of William Coudert Rand, William C Rand, Law Office of William Coudert Rand, New York, NY, for Plaintiff.

Paul J Hickey, Hickey & Mackey, Cheyenne, Richard A Beran, McCarter & English, New York, NY, Roger Fransen, Hickey & Mackey, Cheyenne, Thomas Tenenbaum, Tenenbaum Law Firm, Englewood, CO, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

BRIMMER, District Judge.

This matter is before the Court upon Defendants' Motion to Dismiss. After considering the motion, having reviewed the materials on file, having heard oral argument, and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

## I. STATEMENT OF PARTIES AND JURISDICTION

Plaintiff Ravenswood Investment Company, L.P. is a New York limited partnership. Plaintiff Robotti & Company, Incorporated is a New York corporation. Plaintiff Robotti & Company, LLC is a New York limited liability company. Defendant Bishop Capital Corporation ("Bishop Capital") is a Wyoming Corporation whose principal place of business is Riverton, Wyoming. Defendant Robert E. Thrailkill is and was at all relevant times Chairman of the Board, Chief Executive Officer, and President of Bishop Capital. Defendant Robert J. Thrailkill is and was at all relevant times a director of Bishop Capital. Robert J. Thrailkill is the son of Robert E. Thrailkill. Defendant Sherry L. Moore is and was at all relevant times a director, secretary, and Chief Financial Officer of Bishop Capital.

The federal law claims in this case arise under the Securities Exchange Act of 1934 ("Securities Exchange Act"). As such, jurisdiction in this Court is proper pursuant to Section 27 of the Act, codified as 15 U.S.C. § 78aa. The state law claims are properly before this Court according to 28 U.S.C. § 1367(a). In addition, this Court has jurisdiction over the state law claims under 28 U.S.C. § 1332 as the parties are citizens of different states. Venue is appropriate under 28 U.S.C. 1391(b).

## II. BACKGROUND

Bishop Capital is a Wyoming corporation that is primarily engaged in the business of owning and managing interests in real estate and natural gas royalties. It has been operating in Wyoming for quite some time. In 1997, Bishop Capital made the decision to become a Securities Exchange Commission ("SEC") reporting company. Bishop Capital believed that this business move would allow them to raise capital and increase the liquidity of the company's shares.

However, after eight years of reporting, Bishop Capital decided that it no longer wanted to be a reporting company. Accordingly, the company devised a plan to reorganize itself into a private corporation and discontinue reporting. The SEC, however, informed Bishop Capital that this particular plan was not legally feasible. Nevertheless, in the course of discussions with the SEC it became apparent that Bishop Capital could utilize another method to change the company and avoid reporting. Specifically, Bishop Capital could reduce the size of the company, in terms of outstanding shares, below the reporting minimum if it utilized a reverse stock split.

Consequently, in April of 2004, Bishop Capital proposed a 1 for 110 reverse stock

split to the shareholders. Under the proposed split, all fractional shares would be purchased by the company for $1.00 per pre-split share. According to Defendants, the reverse split would reduce the number of shareholders from 1,800 to 300.

On November 12, 2004, Bishop Capital mailed a proxy statement regarding the proposed reverse split to all shareholders. The company also notified all shareholders that a vote on the stock split issue would take place during a shareholder's meeting on December 16, 2004.

However, before the meeting could take place, Plaintiffs filed suit against the Defendants in the United States District Court for the Southern District of New York. The suit alleged that Defendants made false, misleading, and unlawful statements in their proxy statement in an effort to discourage shareholders from voting against the stock split. Plaintiffs also contended that the individual Defendants in the suit, as controlling shareholders, breached their fiduciary duties to the minority shareholders. Plaintiffs requested that the court grant them monetary damages and numerous forms of equitable relief, including an injunction prohibiting a vote on the reverse stock split.

In an effort to accommodate the needs of both parties regarding the quickly-approaching transaction vote, the court suggested that the parties agree to a standstill order. Under the order, the company could proceed with the stock split vote as planned. However, if the transaction was approved Bishop Capital would agree not to implement the vote until given permission to do so by the court.

The parties agreed to the standstill order and the shareholder's meeting occurred on the originally scheduled date. The voting shareholders overwhelmingly approved the reverse stock split by a vote of 544,318 to 104,712. *See* Def.'s Mem. Supp. Mot. to Dismiss at Exhibit 16. Nev-

ertheless, in accordance with the standstill order, Bishop Capital has not implemented the decision of the shareholders and continues to file reports with the SEC.

Prior to the meeting and vote, on about December 8, 2004, the Defendants timely filed a motion to dismiss or in the alternative a motion to transfer to this District. On February 1, 2005, Judge Kenneth Karas of the Southern District of New York, granted the motion to transfer. Consequently, the case is now pending before this Court.

## III. LEGAL STANDARD

A federal district court may dismiss a cause of action for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Yousef v. Reno*, 254 F.3d 1214, 1219 (10th Cir.2001). The district court must assume the plaintiff's allegations are true and construe them liberally in the light most favorable to him. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir.1997). The district court's function on a Rule 12(b)(6) motion is to assess whether the plaintiff's complaint alone is legally sufficient to state a claim upon which relief may be granted. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). In so assessing, the district court is not to weigh potential evidence that might be presented or determine who will ultimately prevail; rather, the issue is whether the plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The plaintiff may not overcome pleading deficiencies with arguments that extend beyond the allegations contained in the

complaint. *Bauchman v. West High Sch.*, 132 F.3d 542, 550 (10th Cir.1997).

## IV. DISCUSSION

Defendants argue that many of the claims asserted by Plaintiffs in their Amended Complaint should be dismissed for failure to state a claim. Specifically, Defendants argue that (1) Plaintiffs' Fourth and Fifth Counts fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"); (2) Plaintiffs' Derivative Counts fail to state a claim because Plaintiffs do not adequately represent the shareholders; (3) Plaintiffs' Fifth Count, in addition to reasons previously stated, fails to state a claim because it does not meet the requirements of 15 U.S.C. § 78r; and (4) Plaintiffs' Seventh, Eighth, and Ninth Counts fail to adequately state claims for fraud, breach of fiduciary duty, and ultra vires acts. *See* Def.'s Mem. Supp. Mot. to Dismiss at 11–25. All of these arguments are discussed individually below.

### A. Pleading Requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA

Defendants claim that Counts Four and Five of Plaintiffs' Amended Complaint, which allege violations of Section 10(b) of the Securities Exchange Act and Rule 10b–5, fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. Essentially, Defendants argue that Plaintiffs have not pled fraud with enough particularity.

According to Rule 9(b), in all cases alleging fraud, the plaintiff must state the circumstances constituting fraud with particularity. Fed.R.Civ.P. 9(b). However, Rule 9(b) does not require a specific pleading of scienter as "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

In securities fraud cases, the pleading requirements of Rule 9(b) are heightened by the PSLRA. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir.2003). Under the PSLRA, all complaints alleging violations of the securities laws by virtue of untrue statements or omissions of material fact must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *Adams*, 340 F.3d at 1095.

■ Furthermore, the PSLRA requires a specific pleading of scienter:

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2); *Adams*, 340 F.3d at 1095–96; *see also City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1255 n. 13 (10th Cir.2001) ("The scienter pleading requirements of the PSLRA ... supercede the provisions of Rule 9(b) in securities fraud cases."). Thus, "[w]hen reviewing a plaintiff's allegations of scienter under the PSLRA, a court should ... examine the plaintiff's allegations in their entirety ... and determine whether the plaintiffs' allegations, taken as a whole, give rise to a strong inference of scienter." *Fleming Companies, Inc.*, 264 F.3d at 1263.

■ Contrary to Defendants' argument, Plaintiffs' complaint does meet the pleading requirements of Rule 9(b) and the

PSLRA. First of all, the Amended Complaint specifically sets forth the statements made by Bishop Capital which Plaintiffs believe were misleading and why such statements were misleading. For example, the following allegations are contained in the Amended Complaint:

5. Defendants falsely misrepresented in the proxy statement that the liquidation value of the company was $1.69 or $1,637,824 in a fraudulent attempt to induce shareholders to vote in favor of the $1.00 buy-out of the fractional shares after the split.

. . . . .

7. The proxy statement among other things falsely stated that the value of the Company's gas interests was $351,605, when in fact the value was in excess of $2.33 million.

. . . . .

9. The proxy statement also falsely stated that the value of the Company's 81% interest in Bishop Powers Ltd, a real estate company, was $453,811 when in fact the value was at least $5.35 million.

. . . . .

11. Furthermore, the proxy statement failed to disclose that on October 10, 2004, 19 days before the Defendants filed the proxy statement with the SEC, Bishop Powers had entered into a contract to sell 28,500 square feet [equal to .65 acres] for $465,000 which confirms that the 18 acres that included this .65 acre lot are worth significantly more than the Company's purported valuation of $560,260 ($453,811/Company's 81% interest). Finally, Plaintiffs hired a property appraiser who has land owned by Bishop Powers as of February 11, 2005 and conservatively valued it at $6.601 million (Bishop's 81% interest equals $5.347 million). Thus, the Company's $453,811 valuation of its 81% interest in Bishop Power's real estate is false and has no reasonable basis.

Amended Complaint at p. 3, ¶¶ 5, 7; p. 4, ¶¶ 9, 11.

Second, the Amended Complaint also meets the requirements of the PSLRA and Tenth Circuit precedent in regards to pleading scienter. In reviewing the Amended Complaint as a whole, and accepting Plaintiffs' allegations as true, it is clear that Plaintiffs have established a strong inference of scienter. *See Pirraglia v. Novell, Inc.,* 339 F.3d 1182, 1194 (10th Cir.2003) ("At this stage, it is not our role to evaluate the accuracy of plaintiffs' well-pleaded facts; the only questions are whether plaintiffs satisfy the Reform Act pleading requirements and whether the facts, if true, give rise to a strong inference of scienter under the securities laws.").

Plaintiffs' allegations, if true, indicate that Defendants had the motive and the opportunity to defraud the investors of the company. For instance, Defendants could have made false statements in the proxy statement to encourage the reverse stock split which would allow the company to acquire outstanding shares at an unfairly low value. The allegations, if correct, also illustrate that Defendants acted on their motive and opportunity. For example, the Amended Complaint, as shown above, contends that Defendants intentionally made fraudulent statements regarding the various assets of the company in order to facilitate the reverse stock split. These allegations of motive, opportunity, and fraudulent statements, when combined and read as a whole, meet the legal pleading requirements of the PSLRA in regards to the Defendants' state of mind.

**B. Adequate Representation**

■ Defendants next argue that Plaintiffs' derivative claims fail to state a claim

and must be dismissed because Plaintiffs do not adequately represent the shareholders in this suit. According to Defendants, Plaintiffs do not represent the interests of the shareholders because "Plaintiffs have an economic interest that is adverse to the corporation's interest and to that of other shareholders. Plaintiffs' demonstrated goal is to advance their own economic interest by purchasing for themselves Bishop's shareholders shares or select assets at prices substantially less than Plaintiffs' own alleged values." *See* Def.'s Mem. Supp. Mot. to Dismiss at 16. As support for this argument, Defendants cite the fact that Plaintiffs have offered to buy the outstanding shares of Bishop Capital on three different occasions. *See* Def.'s Mem. Supp. Mot. to Dismiss at Exhibit 8. Defendants also point out that the Plaintiffs have attempted to buy select assets from Bishop Capital. *See id.*

Defendants' argument on this point stems from Federal Rule of Civil Procedure 23.1 and Wyoming Statute § 17–16–741. According to Rule 23.1, a shareholder "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Fed. R.Civ.P. 23.1. Similarly, under § 17–16–741, "[a] shareholder may not commence or maintain a derivative proceeding unless the shareholder ... [f]airly and adequately represents the interests of the corporation in enforcing the right of the corporation." Wyo. Stat. Ann. § 17–16–741.

"The determination of whether a plaintiff fairly and adequately represents the interests of similarly situated shareholders and the corporation is fact-specific." 13 William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 5981.41 (Perm. ed.2004). Thus, in assessing the adequacy of the plaintiff, the courts will often look to various factors, including: (1) whether the plaintiff has interests, especially economic interests, antagonistic to those of the corporation, (2) whether the plaintiff is familiar with the litigation, (3) whether there is other pending litigation between the plaintiff and the defendants, (4) whether the plaintiff is supported by other shareholders, (5) indications that the named plaintiff is not the real party in interest; and (6) the plaintiff's level of vindictiveness toward the defendants. *See, e.g., id.; Larson v. Dumke,* 900 F.2d 1363, 1367 (9th Cir.1990); *Rothenberg v. Security Management Co., Inc.,* 667 F.2d 958, 961 (11th Cir.1982); *Davis v. Comed, Inc.,* 619 F.2d 588, 593–94 (6th Cir.1980).

 Ultimately, it is the defendant's burden to show that the derivative plaintiff does not fairly and adequately represent the other shareholders. *See Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 592 n. 15 (5th Cir.1974) ("The burden is on the defendants to obtain a finding of inadequate representation ...."); *see also Guenther v. Pacific Telecom, Inc.,* 123 F.R.D. 341, 344 (D.Or.1987); *Baron v. Strawbridge & Clothier,* 646 F.Supp. 690, 695 (E.D.Pa. 1986); 7C Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1833 (2d ed.1986). Thus, the derivative plaintiff is not required to prove that he is the proper representative of the shareholders. *See Smallwood,* 489 F.2d at 592 n. 15.

In the case at bar, the Defendants contend that Plaintiffs are not an adequate derivative plaintiff because, as mentioned above, they have economic interests contrary to those of the company. However, after comparing Defendants' contentions to the factors set forth above, the Court finds that Defendants' allegations of inadequacy do meet the burden of proof placed upon them.

In the Court's opinion, the fact that Plaintiffs have offered to buy the company's outstanding shares and several of its assets in the past does not amount to an antagonistic economic interest. It seems that something more than past offers to purchase shares or assets is needed to prove an adverse interest. For example, in the cases cited by Defendants in support of their argument, the plaintiffs have interests that are much more hostile to the other shareholders than are Plaintiffs' interests in this case. In *Woods v. Wells Fargo Bank Wyoming*, 90 P.3d 724 (Wyo. 2004), the derivative plaintiff had been accused by the other shareholders of stealing $80,000 from the corporation. *Id.* at 735–36. Likewise, in *Torchmark Corporation v. Bixby*, 708 F.Supp. 1070 (W.D.Mo.1988), the plaintiff was engaged in a tender offer to gain control of the company at the lowest possible price per share while the shareholders wanted the highest available share price. *Id.* at 1077. The other cases cited by Defendants are also factually distinguishable. *See, e.g., Strawbridge & Clothier*, 646 F.Supp. at 695–96 (plaintiff was attempting to complete a tender offer in order to gain control of the company at the time of the derivative suit); *Hall v. Aliber*, 614 F.Supp. 473, 476 (E.D.Mich.1985) (plaintiff indicated that he wished to take over the corporation); *Zamer v. Diliddo*, 1999 WL 606731 (W.D.N.Y.1999) (all remaining shareholders signed affidavits stating that they did not support suit brought by derivative plaintiff); *Meimaris v. Hudner*, 1995 WL 413164 (S.D.N.Y. 1995) (derivative plaintiff brought suit against former employer while working for competitor corporation).

■ It is clear that Plaintiffs' interests do not rise to the level of antagonism present in the above-cited cases. A plaintiff is not an inadequate derivative representative simply because he is a potential purchaser of shares. *See Strawbridge & Clothier*, 646 F.Supp. at 695 (noting that interests do not "automatically diverge in all cases where a derivative plaintiff is a potential purchaser and other shareholders are potential sellers"). As stated before, in order to disqualify a derivative plaintiff there·must be a more compelling reason than a past offer to purchase shares or assets. Consequently, Defendants have failed to meet their burden of proof and dismissal of Plaintiffs' derivative claims is not justified.

## C. Requirements of 15 U.S.C. § 78r

■ Defendants next argue that Plaintiffs' Fifth Claim for Relief fails to state a cognizable claim for relief under Section 18 of the Securities Exchange Act, codified as 15 U.S.C. § 78r. More specifically, Defendants claim that Plaintiffs have not relied upon Defendants' statements to their detriment as required by the statute.

■■ Section 18 of the Securities Exchange Act provides, in pertinent part, as follows:

Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, *shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement,* for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

15 U.S.C. § 78r (emphasis added). As is made clear by the codified language, the statute requires actual reliance in order to create liability. Constructive reliance is not sufficient. *Heit v. Weitzen*, 402 F.2d 909, 916 (2d Cir.1968); *In re Digi Intern., Inc. Securities Litigation*, 6 F.Supp.2d 1089, 1103 (D.Minn.1998). Therefore, a plaintiff bringing suit under § 78r must affirmatively allege that he relied upon fraudulent information contained in a SEC filing when he bought or sold the security at issue. *In re Suprema Specialities, Inc. Securities Litigation*, 334 F.Supp.2d 637, 654 (D.N.J.2004) ("A plaintiff must specifically allege that he actually read a copy of the document filed with the SEC; or relevant parts of the document reported in some other source, and was induced to act upon specific misrepresentations in the document."); *Cyber Media Group, Inc. v. Island Mortgage Network, Inc.*, 183 F.Supp.2d 559, 577 (E.D.N.Y.2002) ("To state a prima facie case pursuant to Section 18(a) of the Exchange Act, Plaintiffs must plead that they purchased or sold a security in actual reliance on a specifically identified document filed with the SEC.").

In the current case, Plaintiffs allege that they "purchased shares of Bishop Capital in reliance on Bishop Capital's false public filings and have suffered damages as a result." Amended Complaint at 49, ¶ 195. Plaintiffs also allege that they will be "stripped of a portion of their equity" if the Court allows the reverse stock split to proceed. *See id.* at 48, ¶ 193. In other words, Plaintiffs contend that the reverse split will cause them to sell their fractional shares back to the company at an amount less than their fair value.

Nevertheless, based upon the allegations contained in the Amended Complaint as it now stands, the Court fails to see how Plaintiffs relied upon Defendants' statements to their detriment in a buying or selling transaction. For instance, Plaintiffs themselves surely did not rely on the proxy statement in voting on the reverse stock split as they contend that they knew it was false prior to the voting. Thus, Plaintiffs did not rely on the false statements in selling the shares back to the corporation if the reverse split is ultimately allowed to proceed by the Court. Furthermore, the Court does not understand how the Plaintiffs relied upon the purportedly false filings to their detriment in buying Bishop Capital stock. If Plaintiffs' allegations are true, Plaintiffs purchased stock for a price that is well below its actual worth. This can hardly be termed a detriment.

Plaintiff's claim that buying the stock is going to cause them harm when they are forced to sell the stock is also inadequate as it is too attenuated. "[A] prerequisite of a claim under section 18(a) ... of the 1934 Act is the fact that the plaintiff shall have purchased or sold securities and the injury for which damages are sought shall have been the direct result of such purchase or sale." *Hoover v. Allen*, 241 F.Supp. 213, 223 (S.D.N.Y.1965). More succinctly, Plaintiffs have to be able to prove that they relied upon Defendants' statements to their detriment during a sale or a purchase—not a combination of the two. Based upon the complaint, Plaintiffs have only alleged (1) that they relied upon statements when purchasing the shares and (2) that they will be harmed when they sell the shares. This causal connection will not suffice.

The Court does not dispute that other shareholders may have a claim under Section 18 of the Securities Exchange Act. All shareholders who voted for the reverse split without knowing that the proxy was false would have a valid action under § 78r. *See id.* at 223–26. However, Plaintiffs do not bring this particular claim as derivative plaintiffs. Furthermore, Plaintiffs did know about the alleged falsity of

the statements prior to the vote. Thus, they are not the appropriate parties to bring this claim.

Although it is clear that the Plaintiffs may have a claim against Defendants for their allegedly false statements contained in the proxy statement, which caused the shareholders to vote for the reverse split, the Court **FINDS** that the Amended Complaint does not adequately state a claim for relief under 15 U.S.C. § 78r. Consequently, Plaintiffs' Fifth Claim for Relief is **DISMISSED**. However, Plaintiffs are granted leave of Court to file a Second Amended Complaint if they can, based upon the foregoing discussion, set forth an adequate claim under § 78r.

### D. Fraud, Breach of Fiduciary Duty, and Ultra Vires Acts

In their final argument, .Defendants' aver that the Amended Complaint does not adequately set forth state law claims for fraud, breach of fiduciary duty, or ultra vires acts. Each claim is discussed below.

### 1. Common Law Fraud and Wyoming Statute § 17–4–101

In their Seventh Claim for Relief, the Plaintiffs allege that Defendants committed common law fraud. Plaintiffs also contend that Defendants violated Wyoming Statute § 17–4–101, which is fairly analogous to the federal claim regarding Section 10 of the Securities Exchange Act and Rule 10b–5.

■ In order to prevail on a common law fraud allegation under Wyoming law, a plaintiff must prove (1) that the defendant made a false representation to induce action, (2) that the plaintiff relied upon the representation to his detriment, and (3) that the plaintiff reasonably believed the representation to be true. *Halliburton Co. v. Claypoole*, 868 P.2d 252, 256 (Wyo. 1994) (citing *Lavoie v. Safecare Health*

*Service, Inc.*, 840 P.2d 239, 252 (Wyo. 1992)).

■ Plaintiffs' common law fraud claim suffers from the same deficiencies as their § 78r claim. Based upon the Amended Complaint, Plaintiffs cannot show that they relied upon a statement to their detriment. As with the § 78r claim, Plaintiffs can only show that they relied upon a statement in buying shares and will suffer a detriment in selling the shares. Plaintiffs cannot combine the two separate transactions to prove fraud claims that require actual reliance.

Therefore, Plaintiffs' common law fraud claim must be **DISMISSED** for failure to state a claim. However, as with Plaintiffs' § 78r claim, Plaintiffs are granted leave of Court to file a Second Amended Complaint which sets forth a common law fraud claim that meets the requirements of the law.

■ As mentioned previously, Plaintiffs also allege in Count Seven of the Amended Complaint that Defendants violated § 17–4–101, which provides:

(a) It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(i) To employ any device, scheme, or artifice to defraud;

(ii) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(iii) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Wyo. Stat. § 17–4–101.

This section, which is very similar to Rule 10b–5 and Section 10 of the Securities Exchange Act, does not appear to

require actual reliance. Thus, reliance can be presumed. *See Basic Inc. v. Levinson,* 485 U.S. 224, 241–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (noting that reliance in 10b–5 claims can be presumed by the fraud-on-the-market theory). Because Plaintiffs do not have to show actual reliance, their claim under § 17–4–101 can proceed. The Amended Complaint alleges facts which would allow the fact finder to determine that Defendants violated this statute. Therefore, dismissal would not be appropriate.

### 2. Breach of Fiduciary Duty

 "The fiduciary obligation of a director is a fundamental component of the corporate structure. It is embodied in [Wyoming Statute § 17–16–830], which imposes upon directors the affirmative duties of good faith, loyalty and care . . . ." *Lynch v. Patterson,* 701 P.2d 1126, 1132 (Wyo. 1985); *see also Squaw Mountain Cattle Co. v. Bowen,* 804 P.2d 1292, 1296 (Wyo. 1991) ("Corporate officers and directors have a fundamental duty of loyalty and fiduciary responsibility to their corporation."). Section 17–16–830 provides:

> (a) A director shall discharge his duties as a director, including his duties as a member of a committee:
> (i) In good faith;
> (ii) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
> (iii) In a manner he reasonably believes to be in or at least not opposed to the best interests of the corporation.

Wyo. Stat. Ann. § 17–16–830.

Based upon the foregoing review of Wyoming law, it is clear that Plaintiffs' Eighth Claim for Relief, as stated in the Amended Complaint, must withstand Defendants' Motion to Dismiss. If the Court accepts Plaintiffs' allegations as true, which it must at this juncture in the proceedings, then the individual Defendants in this case may have breached their fiduciary duties under § 17–16–830. For example, Defendants intentional failure to disclose important financial information to the shareholders as alleged by the Plaintiffs could amount to an individual breach of a fiduciary duty. *See, e.g., Squaw Mountain Cattle Co.,* 804 P.2d at 1297 (noting that failure to disclose noteworthy financial information is a breach of a director's fiduciary duty).

Plaintiffs have alleged facts which could allow them to recover for breach of fiduciary duty. Therefore, dismissal is not appropriate. *See, supra, Sutton,* 173 F.3d at 1236.

### 3. Ultra Vires Acts

Ultra vires acts are those acts that are "beyond the powers expressly or impliedly conferred upon a corporation." 18B AM. JUR.2d *Corporations* § 1732. The term is also "sometimes applied to acts done by the directors or other officers of a corporation in excess of the powers conferred on them by the stockholders." 7A William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 3401 (Perm. ed.1997).

 In this case, Plaintiffs allege that the individual Defendants, as directors of Bishop Capital, caused the company to commit ultra vires acts. Plaintiffs list several acts completed by Bishop Capital that they contend are outside the scope of the company's authority, including issuing shares to the individual Defendants at a reduced price and failing to hold annual shareholder meetings.

Plaintiffs' allegations sufficiently state a cause of action upon which relief could be granted. It is possible, if Plaintiffs' allegations are true, that the finder of fact could conclude that Defendants' committed ultra vires acts. *See, e.g., Gooding v. Millet,* 430 So.2d 742, 743–44 (La.Ct.App.1983) (noting that the lack of shareholder meetings con-

tributed to finding that directors of corporation had committed ultra vires acts); Wyo. Stat. § 17–16–621 (establishing that a corporation may only issue shares in exchange for adequate consideration); 11 William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 5223 (Perm. ed.2003) (stating that courts have treated the issuance of watered stock as an ultra vires transaction). Consequently, dismissal of this count is not warranted.

## V. CONCLUSION

Based upon the foregoing discussion, it is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part;

**THEREFORE, IT IS FURTHER ORDERED** that Plaintiffs' claim brought under 15 U.S.C. § 78r is DISMISSED without prejudice. Plaintiffs may file a second amended complaint in order to meet the pleading requirements of the statute.

**IT IS FURTHER ORDERED** that Plaintiffs' claim for common law fraud is **DISMISSED** without prejudice. As with the § 78r claim, Plaintiffs may file a second amended complaint in order to bring a valid cause of action for common law fraud if the facts underlying this proceeding are conducive to such a claim.

And finally, as to all other claims of the Defendants, the Motion to Dismiss is hereby **DENIED**.